IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN TESTANI, ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KEVIN JAMESON, ET AL. | : | NO.  24-2193 |

## MEMORANDUM

**Padova, J.**                                                    **February 11, 2024**

Plaintiffs brought this lawsuit against Kevin Jameson and the Dementia Society, Inc. d/b/a Dementia Society of America (the "Dementia Society") for violation of the Federal and Pennsylvania Wiretap Acts and for wrongful termination and intrusion upon seclusion under Pennsylvania common law.  Defendants have moved to dismiss the Complaint for failure to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and, in the alternative, have moved to strike certain factual allegations made in the Complaint. For the reasons that follow, we deny the Motion to the extent that it asks us to dismiss Plaintiffs' claims and we grant the Motion in part and deny it in part to the extent that it asks us to strike certain factual allegations from the Complaint.

## I.    BACKGROUND

The Complaint alleges the following facts.  Plaintiff Susan Testani was the Dementia Society's Executive Administrator; Plaintiff Rona Brown was its Membership Coordinator; and Plaintiff Joy Sullivan was its Donation Processor.  (Compl. ¶¶ 1-3.)  Defendant Jameson is the Founder, Chief Executive Officer, President, and Chairman of the Board of the Dementia Society.  (Id. ¶ 4.)  The Dementia Society is a not-for-profit entity that generated close to $6 million in revenues in 2023.  (Id. ¶ 5.)

On February 19, 2024, Testani discovered an electronic listening and recording device hidden on a shelf in her office at the Dementia Society. (Id. ¶ 14.) She had not been told that there was a listening device in her office. (Id.) The device was circular with an on/off switch. (Id. ¶ 15.) Testani turned the device off and heard a voice stating "microphone off," which indicated that the device "was being used as a listening device that electronically transmitted sound." (Id.) Testani informed her co-workers about the listening device that she had found in her office. (Id. ¶ 16.) They then searched their own offices for hidden electronic listening/recording devices. (Id.) Plaintiffs found another device on a shelf near a desk, hidden behind a stack of pamphlets. (Id.) They also discovered that a third device that was located in the office shared by Sullivan and Brown, and which Jameson referred to as "the doorbell," was actually a listening device. (Id. ¶ 17.)

Each of the Plaintiffs had an expectation of privacy in her workspace. (Id. ¶ 18.) Plaintiffs spoke about personal matters in the workplace, including conversations with family members, discussions of health and family issues, and "private concerns about the odd behavior of their supervisor, Jameson." (Id. ¶ 19.) Plaintiffs' private conversations, held at their own desks, could not be heard by Jameson or other third parties through normal hearing. (Id. ¶ 20.) However, their private conversations could be picked up by the listening devices hidden in their work areas. (Id. ¶ 21.)

Plaintiffs felt violated after they discovered the listening devices, "knowing that Jameson had been listening in on their private conversations, spying on them, and invading their privacy." (Id. ¶ 22.) Jameson also went through Plaintiffs' garbage cans at night and snooped on their email and web usage. (Id. ¶ 23.)

Later in the morning of February 19, 2024, Plaintiffs unplugged the listening device in Testani's office.  (Id. ¶ 25.)  After Jameson arrived at the office that day he went into Testani's office and said "'Oh Google, Oh Google.'"  (Id.)  He picked up the listening device, which was still in Testani's office, and asked Testani why it had been turned off.  (Id.)  In response, Testani stated that she had not given permission to be recorded and that she did not feel comfortable with being recorded.  (Id. ¶ 26.)  Jameson responded "'Oh this is a nothing burger. . . .  I've got them at home and here.'"  (Id. ¶ 27 (alteration in original).)  Testani then stated that it is "illegal to record or bug a person's office without their consent, [and] Jameson responded . . . '[i]t's a stupid law.'"  (Id. ¶ 28.)  Sullivan then entered Testani's office and said "'Kevin, we're telling you that as employees we are not comfortable with these [listening devices] in our offices.'"  (Id. ¶ 29 (alteration in original).)  Jameson told Testani and Sullivan that he would not stop using the listening devices, that he had microphones "'all over here,'" and that he would not stop using technology.  (Id. ¶ 31.)

Plaintiffs notified the Dementia Society Board of Directors about the listening devices on February 20, 2024.  (Id. ¶ 33.)  On February 21, 2024, Plaintiffs received an email from Jameson with the subject line "'DSA Offices Closed Until Further Notice.'"  (Id. ¶ 35.)  The email stated: "'Don't bother coming in until we speak next.'"  (Id.)  After he sent this email, Jameson "was seen entering [the office], leaving, and working at his desk on numerous occasions. That access gave him time to destroy evidence of his criminal conduct."  (Id. ¶ 36.)  The Dementia Society Board of Directors did not take "any actions to restrict Jameson's activities, preserve the crime scene, discipline him, or correct his unlawful behavior."  (Id. ¶ 37.)

Plaintiffs reported this incident to the Central Bucks Regional Police Department on February 22, 2024.  (Id. ¶ 38.)  Plaintiffs provided the police with photographs of the secret

listening devices and told the police about their discussion with Jameson.  (Id.)  The police investigated and referred the matter to the Bucks County District Attorney's Office on or about March 20, 2024.  (Id. ¶ 39.)

On February 25, 2024, Dementia Society Board Member Blaine Geenfield emailed Plaintiffs and informed them that the matter would be investigated and appropriate corrective action would be taken, if warranted.  (Id. ¶ 40.)  This email also stated that employees would be paid while they were not permitted to go into the office and during the investigation.  (Id. ¶ 41.) The Dementia Society Board hired Cozen O'Connor to conduct the investigation.  (Id. ¶ 42.) Cozen O'Connor informed Jameson about the investigation but did not inform Plaintiffs.  (Id. ¶ 43.)  Over the next month, Plaintiffs repeatedly asked for information about the status of the investigation but received little information.  (Id. ¶ 44.)  On March 1, 2024, Testani met over Zoom with Cozen O'Connor attorneys Stephen Miller and Catherine Yun.  (Id. ¶ 45.)  At the end of their meeting, Miller told Testani said that the investigators were considering both removing Jameson from his position and terminating Plaintiffs with severance.  (Id.)

On March 15, 2024, Miller wrote to Testani and told her that there was no evidence of wiretapping at the Dementia Society office.  (Id. ¶ 46.)  Miller refused to allow Testani to see the report on the ground that it was "attorney-client privileged."  (Id. ¶ 48.)  On "March 19, 2024, Dementia Society Board Treasurer Jeff Moyer and a Cozen O'Connor attorney met with each Plaintiff separately to discuss the 'path forward.'"  (Id. ¶ 49.)  On March 21, 2024, Jeff Moyers emailed the Plaintiffs and told them that "there was no viable path forward and they were being terminated effective that day."  (Id. ¶ 51.)

Each of the Plaintiffs "has suffered and continues to suffer stress, anxiety, emotional distress, [and] pain and suffering as a result of Defendants' actions."  (Id. ¶ 55.)  Each of the

Plaintiffs has also suffered substantial economic losses, including back pay and front pay as a result of being fired.  (Id. ¶ 56.)  Plaintiffs have also incurred damage to their reputations and prospects for future employment and career growth as a result of being fired.  (Id. ¶ 57.)

The Complaint asserts four claims for relief brought by all three Plaintiffs against both Defendants.  Count I asserts a claim of Invasion of Privacy in violation of the Pennsylvania Wiretapping and Electronic Control Act (the "Pennsylvania Wiretap Act").  Count II asserts a claim of Invasion of Privacy in violation of the Federal Electronic Communications and Privacy Act (the "Federal Wiretap Act").  Count III asserts a Pennsylvania common law claim of Wrongful Discharge in violation of public policy.  Count IV asserts a claim of Intrusion Upon Seclusion under Pennsylvania common law.  Defendants have moved to dismiss all four claims pursuant to Rule 12(b)(6).  They also move to strike some language from the Complaint pursuant to Rule 12(f).

## II.    RULE 12(b)(6)

### A.    Legal Standard

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).  "A complaint is properly dismissed for failing to state a claim 'if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that [the] plaintiff's claims lack facial plausibility.'" Talley v. Pillai, 116 F.4th 200, 206 (3d Cir. 2024) (alteration in original) (quoting Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  "[W]e need not 'accept as

true a legal conclusion couched as a factual allegation.'" Host Int'l, Inc. v. MarketPlace PHL, LLC, 32 F.4th 242, 248 (3d Cir. 2022) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (citation omitted).

A plaintiff's pleading obligation is to set forth "'a short and plain statement of the claim,'" which "'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Under this standard, a complaint need not plead all of the facts necessary to prove each element of the plaintiff's claims; "it need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" Martinez v. UPMC Susquehanna, 986 F.3d 261, 266 (3d Cir. 2021) (alteration in original) (quoting Fowler, 578 F.3d at 213). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

B.    Discussion

1.    Rule 8(a)

Defendants argue that we should dismiss Counts I, II, and IV because the Complaint fails to provide descriptions of the devices allegedly used to intercept Plaintiffs' communications with sufficient specificity to satisfy Federal Rule of Civil Procedure 8(a).  Specifically, Defendants argue that the Complaint fails to allege that these devices can be used to intercept communications, as required by both the Federal and Pennsylvania Wiretap Acts.  As we discussed above, Rule 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  The Third Circuit has explained that "Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to plead *some* factual allegations in order to survive a motion to dismiss."    Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 312 (3d Cir. 2014) (citing Twombly, 550 U.S. at 557; Iqbal, 556 U.S. at 678).  "Pleading the 'mere elements' of a cause of action will not do."  Id. (quotation omitted).  Nonetheless, this is a "fairly lenient notice-pleading standard."  Id. (citation omitted).

Both the Federal and Pennsylvania Wiretap Acts make it illegal to intentionally intercept "any wire, oral, or electronic communication."  18 U.S.C. § 2511(1)(a); 18 Pa. Cons. Stat. Ann. § 5703(1).  Both statutes define "intercept" as "aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device."  18 U.S.C. § 2510(4);  18 Pa. Cons. Stat. Ann. § 5702.  In addition, both statutes define "electronic, mechanical or other device," with certain exceptions, as "any device or apparatus which can be used to intercept a wire, oral, or electronic oral communication."  18 U.S.C. § 2510(5); 18 Pa. Cons. Stat. Ann. § 5702 (defining "[e]lectronic, mechanical or other device,"

with certain exceptions, as "[a]ny device or apparatus . . . that can be used to intercept a wire, electronic or oral communication.").

The Complaint contains the following allegations of fact regarding the listening devices. Testani found an electronic listening device hidden in her office at the Dementia Society. (Compl. ¶ 14.)  "The device was circular and had an on/off switch."  (Id. ¶ 15.)  When Testani turned the device off, it "projected a voice stating, 'microphone off,' confirming that it was being used as a listening device that electronically transmitted sound."  (Id.)  Plaintiffs found another such device "hidden behind a stack of informational pamphlets" and a third such device, located in the office used by Sullivan and Brown, had been misidentified by Jameson as a doorbell.  (Id. ¶¶ 16-17.)  Jameson was aware of the location of the listening device in Testani's office, and he was aware that it had been turned off.  (Id. ¶ 25.)  Jameson told Plaintiffs he would not stop using listening devices and admitted to having microphones all over the office.  (Id. ¶ 31.)

The Merriam-Webster Dictionary defines "microphone" as "an instrument whereby sound waves are caused to generate or modulate an electric current usually for the purpose of transmitting or recording sound (such as speech or music)."  Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/microphone (last visited Feb. 7, 2025).  The Merriam-Webster Dictionary defines "intercept" as "to receive (a communication or signal directed elsewhere) usually secretly."  Id., https://www.merriam-webster.com/dictionary/inter-cept (last visited Feb. 7, 2025).  Viewing the allegations of the Complaint in the light most favorable to Plaintiffs, we conclude that the factual allegations related to the listening devices the Plaintiffs found plausibly allege that Plaintiffs found hidden or misidentified electronic devices that were used to secretly intercept speech.  We thus conclude that these allegations are sufficient

to satisfy the notice requirements of Rule 8(a).[1]  Accordingly, we deny the Motion to Dismiss as to this argument.

Defendants also argue that we should dismiss Plaintiffs' claim for intrusion upon seclusion because the Complaint does not sufficiently describe the devices that Plaintiffs found in their offices so that Defendants can respond to this claim.  The Third Circuit has explained the elements of a claim of intrusion upon seclusion as follows:

> To state a claim for intrusion upon seclusion, plaintiffs must allege conduct demonstrating "an intentional intrusion upon the seclusion of their private concerns which was substantial and highly offensive to a reasonable person, and aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities."

Boring v. Google Inc., 362 F. App'x 273, 278-79 (3d Cir. 2010) (quoting Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 809 A.2d 243, 247 (Pa. 2002)).  The elements of an intrusion upon seclusion claim do not specifically require that a plaintiff identify the device used for the intrusion in the complaint.  Defendants nevertheless contend that they cannot properly respond to Plaintiff's intrusion upon seclusion claim without notice of the identity of the actual listening devices that Plaintiffs found in their offices.  However, as we explained above, we conclude that Plaintiffs have provided adequate descriptions of the alleged listening devices for the purposes of

---

[1] Defendants suggest that the devices found by Plaintiffs may be smart speakers sold by Google, although they do not admit outright that they placed Google smart speakers in the Dementia Society office or that there were smart speakers sold by Google in the Dementia Society office at the relevant time.  Defendants also assert that smart speakers sold by Google "are not designed for surveillance but rather are voice-activated virtual-assistant smart-speakers" and posit that Plaintiffs purposely failed to identify these devices as Google smart speakers because such devices, when in standby mode and awaiting voice activation, do not intercept speech and send that speech to third parties.  (Defs. Mem. at 8-9.)  However, on a motion to dismiss, we are not a liberty to consider these additional factual assertions and any inferences that may arise from them.  See Alpizar-Fallas, 908 F.3d at 914 (stating that on a motion to dismiss pursuant to Rule 12(b)(6) we can "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents" (quoting Mayer, 605 F.3d at 230)).

Rule 8, and we reject Defendants' assertion that the descriptions are so vague that it is impossible for them to respond to the Complaint. Accordingly, we deny the Motion to Dismiss with respect to this argument.

2.    <u>Failure to allege facially plausible claims for relief</u>

Defendants ask us to dismiss Plaintiffs' Federal and Pennsylvania Wiretap Act claims on the ground that the Complaint fails to allege sufficient facts to state facially plausible claims for relief under these Acts. The Third Circuit set out the elements of a prima facie case under the Federal Wiretap Act in <u>In re Google Inc. Cookie Placement Consumer Privacy Litigation</u>, 806 F.3d 125 (3d Cir. 2015):

> A plaintiff pleads a prima facie case under the Act by showing that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device."

<u>Id.</u> at 135 (quoting <u>In re Pharmatrak, Inc. Privacy Litig.</u>, 329 F.3d 9, 18 (1st Cir. 2003)) (citing 18 U.S.C. § 2511(1)(a)). The Pennsylvania Supreme Court has set forth the elements for a prima facie case under the Pennsylvania Wiretap Act as follows:

> [I]n order to establish a prima facie case under the [Pennsylvania] Wiretap Act for interception of an oral communication, a claimant must demonstrate: (1) that he engaged in a communication; (2) that he possessed an expectation that the communication would not be intercepted; (3) that his expectation was justifiable under the circumstances; and (4) that the defendant attempted to, or successfully intercepted the communication, or encouraged another to do so.

<u>Agnew v. Dupler</u>, 717 A.2d 519, 522 (Pa. 1998); <u>see also</u> <u>Commonwealth v. Mason</u>, 247 A.3d 1070, 1081 (Pa. 2021) (noting that, in order "to establish a violation of the [Pennsylvania] Wiretap Act, the claimant carries the burden to demonstrate, *inter alia*, that she possessed an expectation that the communication would not be intercepted and that her expectation was

10

justifiable under the circumstances" (citing <u>Agnew</u>, 717 A.2d at 522) (additional citation omitted)).

Defendants argue that Plaintiffs' Wiretap Act claims should be dismissed because the Complaint fails to allege that they intentionally intercepted Plaintiffs' communications and that they had a motive for such interception. Both Wiretap Acts require that the interception of communications be intentional. <u>See</u> 18 U.S.C. § 2511(1)(a); 18 Pa. Cons. Stat. Ann. § 5703(1). Consequently, "inadvertent interceptions are not a basis for criminal or civil liability under the" Federal Wiretap Act. <u>In re Pharmatrak, Inc.</u>, 329 F.3d at 23 (citing S. Rep. No. 99–541, at 23 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3577). The Pennsylvania Wiretap Act similarly does not create liability were someone "inadvertently, in good faith, intercept[ed] a communication." <u>Kline v. Security Guards, Inc.</u>, 15 F. Supp. 2d 848, 854 (E.D. Pa. 2001). We may consider motive when determining whether an interception is intentional, since "[a]n interception may be more likely to be intentional when it serves a party's self-interest to engage in such conduct," but "liability for intentionally engaging in prohibited conduct does not turn on assessment of the merit of a party's motive." <u>In re Pharmatrak, Inc.</u>, 329 F.3d at 23 (citing <u>Abraham v County of Greenville</u>, 237 F.3d 386, 391-92 (4th Cir. 2001)).

The Complaint alleges that Jameson knowingly and willfully intercepted Plaintiffs' communications and listened to those communications with the full support and approval of the Dementia Society and its Board of Directors. (<u>See</u> Compl. ¶¶ 60-61, 68, 70.) It further alleges that when Testani turned off the listening device she found in her office, the device stated "microphone off," thereby indicating that it was being used as a device that electronically transmitted sound. (<u>Id.</u> ¶ 15.) The Complaint also alleges that, not long after Testani unplugged the listening device in her office, Jameson walked into her office, said "Oh Google, Oh Google,"

and then picked up the listening device and asked Testani why it had been turned off.  (Id. ¶ 25.)
According to the Complaint, Jameson's knowledge that the listening device had been turned off
shows that he was monitoring the listening device from his office, and we can infer from his
knowledge of the location of the listening device that he placed the listening device in Testani's
office.  (Id.)  The Complaint also alleges that Sullivan joined Jameson and Testani in Testani's
office and told Jameson that Plaintiffs were not comfortable having the listening devices in their
offices.  (Id. ¶ 29.)  Jameson responded by telling Plaintiffs that he would not stop using listening
devices and that Plaintiffs could turn off the devices they found if they liked because he had
"microphones all over here."  (Id. ¶ 31.)   Viewing these allegations in the light most favorable to
Plaintiffs, we conclude that the Complaint alleges that Jameson intentionally placed listening
devices where they could intercept Plaintiffs' communications, that he monitored those devices,
thus intentionally using those devices to intercept Plaintiffs' communications, and that he had the
full support of the Dementia Society in doing so.  We thus conclude that the Complaint plausibly
alleges the intentional interception elements of claims under the Federal and Pennsylvania
Wiretap Acts.  See In re Google, 806 F.3d at 135; Agnew, 717 A.2d at 522.  Having concluded
that the Complaint plausibly alleges intentional interception, we need not also determine whether
it plausibly alleges motive, as liability for intentional interception "does not turn on assessment
of the merit of a party's motive."   In re Pharmatrak, 329 F.3d at 23 (citing Abraham, 237 F.3d at
391-92).  Accordingly, we deny the Motion to Dismiss with respect to Counts I and II, Plaintiffs'
Federal and Pennsylvania Wiretap Act claims.

Defendants also argue that the Complaint fails to plausibly allege a claim for intrusion
upon seclusion.  As we discussed above,  "[t]o state a claim for intrusion upon seclusion" a
complaint "must allege conduct demonstrating 'an intentional intrusion upon the seclusion of

[plaintiffs'] private concerns which was substantial and highly offensive to a reasonable person, and aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities." Boring, 362 F. App'x at 278-79 (quoting Pro Golf Mfg., 809 A.2d at 247).

Defendants maintain that the Complaint fails to allege facts that would demonstrate that they intentionally intruded upon Plaintiffs' seclusion and that such intrusion was substantial and highly offensive to a person of ordinary sensibilities. See id. As we have summarized above, the Complaint alleges that Jameson, with the full knowledge and support of the Board of the Dementia Society, placed listening devices in Plaintiffs' offices, monitored those devices, and refused to stop using microphones to monitor Plaintiffs' communications when asked to do so by Sullivan. (See Complaint ¶¶ 15, 25, 29, 31, 60-61.) The Complaint also alleges the following facts that are relevant to Plaintiff's intrusion upon seclusion claim. Each of Plaintiffs had an expectation of privacy in her office when she engaged in private telephone conversations with family and friends and co-workers. (Id. ¶ 18.) Plaintiffs had not been informed about the presence of the listening devices in their offices. (Id.) All of the Plaintiffs engaged in personal discussions of their private affairs in their offices, those conversations concerned family and medical issues, and they did not expect that Jameson or any other third-party would be listening to those conversations. (Id. ¶¶ 19, 89-90.) "Plaintiffs often discussed highly private and personal matters at their workspaces, including items related to their health, family issues, . . . and private concerns about the odd behavior of their supervisor, Jameson." (Id. ¶ 19.) Jameson and other third parties could not hear these conversations, which Plaintiffs conducted at their own desks, without the use of listening devices. (Id. ¶ 20.) The interceptions of Plaintiffs' private conversations occurred over a period of months. (Id. ¶ 91.) Plaintiffs felt violated by the

presence of listening devices that intercepted their private communications in their offices, found Defendants' use of these devices to be offensive, and strongly objected to the placement of the listening devices.  (Id. ¶¶ 22, 26-32, 92.)  Based on these allegations, we conclude that the Complaint plausibly alleges intentional intrusion upon the seclusion of Plaintiffs' private concerns and that the intrusion was substantial and highly offensive to a reasonable person.  See Boring, 362 F. App'x 273 at 278-79 (quotation and citation omitted).  Accordingly, we deny the Motion to Dismiss with respect to Count IV of the Complaint.

Defendants also argue that we should dismiss Count III, Plaintiffs' wrongful discharge claim, because Plaintiffs were at-will employees.  "Pennsylvania law recognizes the doctrine of at-will employment so that, as a general rule, no cause of action exists based upon an employer's termination of an at-will employment relationship."  Spierling v. First Am. Home Health Servs., Inc., 737 A.2d 1250, 1252 (Pa. Super. Ct. 1999) (quoting Shick v. Shirey, 716 A.2d 1231, 1233 (Pa. 1998).  "Generally, an employer 'may discharge an employee with or without cause, at pleasure, unless restrained by some contract.'"  Id. (quoting Shick, 716 A.2d at 1233).  However, "[t]he employer's privilege to dismiss an employee with or without cause is not absolute . . . and may be qualified by the dictates of public policy."  Id. at 1252-53 (quoting Shick, 716 A.2d at 1233).  Thus, "[a]n employee may bring a cause of action for a termination of [the employment] relationship only in the most limited circumstances, where the termination implicates a clear mandate of public policy."  Weaver v. Harpster, 975 A.2d 555, 563 (Pa. 2009).  "These circumstances include instances in which the discharge of an at-will employee would violate a constitutional, contractual, or statutory provision . . . ."  Salsberg v. Mann, 310 A.3d 104, 126 (Pa. 2024) (citations omitted).

The Complaint contains the following allegations of fact relevant to Plaintiffs' wrongful termination claims.  Plaintiffs were fired in retaliation for exercising their rights to report Jameson's violations of the Federal and Pennsylvania Wiretap Acts to the Central Bucks Regional Police Department.  (Compl. ¶ 53.)  The "Pennsylvania Crime Victims Act, 44 Pa. Code § 101 et seq., encourages victims of state and federal crimes to report and cooperate with the police with regard to criminal conduct, including any violation of federal criminal law."  (Id. ¶ 74.)  The Pennsylvania Crime Victims Act is based on "the 'recognition of the civic and moral duty of victims of crime to fully and voluntarily cooperate with law enforcement and prosecutorial agencies,' including the report and prosecution of crime."  (Id. ¶ 75 (quoting 44 Pa. Code § 102).)  "[O]n February 22, 2024, Plaintiffs engaged in conduct protected under the law and public policy of Pennsylvania by reporting Defendants' criminal conduct to the Central Bucks Regional Police Department" and Defendants fired Plaintiffs four weeks after they engaged in that protected conduct.  (Id. ¶¶ 79, 82.)  "Defendants gave false and pretextual reasons for the terminations, which never would have happened if Plaintiffs had not reported their unlawful conduct to the police as was their right under the law."  (Id. ¶ 83.)

Defendants do not challenge the proposition that it violates public policy to terminate an employee for reporting the employer's criminal conduct.  Rather, Defendants argue that the Complaint fails to plausibly allege that Plaintiffs were wrongfully discharged in violation of public policy "because, by their own allegations, they were discharged for insisting that the CEO (Jameson) be removed, which constitutes an independent and legitimate reason."  (Defs. Mem. at 20.)  However, this is a mischaracterization of the factual allegations of the Complaint.  As summarized above, the Complaint clearly and specifically alleges that Plaintiffs were fired for reporting Defendants' unlawful conduct to the police.  (See Compl. ¶ 83.)  While Defendants

may, of course, argue at a later date that the evidence demonstrates that Plaintiffs were terminated for some other reason, such as insisting that the Dementia Society fire Jameson, the Complaint alleges that any such alternative reason for their terminations was false. (Id. ¶ 83.) Viewing the allegations of the Complaint in the light most favorable to the Plaintiffs, we find that the Complaint plausibly alleges that Plaintiffs were fired for exercising their statutory rights to report the commission of crimes of which they were the victims. We conclude, accordingly, that the Complaint plausibly alleges that Plaintiffs were terminated in violation of the public policy of Pennsylvania. See Salsberg, 310 A.3d at 126 (stating that termination of an at-will employee may violate public policy where it "would violate a constitutional, contractual, or statutory provision" (citations omitted)). Consequently, we deny Defendants' request that we dismiss Plaintiffs' wrongful termination claim on the ground that Plaintiffs were at-will employees.

### III.    RULE 12(f)

Defendants ask that we strike certain factual allegations made in the Complaint pursuant to Federal Rule of Civil Procedure 12(f). Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12. "Motions to strike 'are disfavored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" Angelis v. Philadelphia Hous. Auth., Civ. A. No. 23-460, 2024 WL 643142, at *3 (E.D. Pa. Feb. 15, 2024) (quoting Jones v. United States, Civ. A. No. 10-3502, 2012 WL 2340096, at *2 (D.N.J. June 18, 2012)). "'The standard for striking under Rule 12(f) is strict and . . . only allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken.'" Zucal v. Cnty. of

16

Lehigh, Civ. A. No. 21-4598, 2023 WL 3997963, at *13 (E.D. Pa. June 14, 2023) (alteration in original) (quoting Johnson v. Anhorn, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004)).

Defendant asks that we strike the following language from paragraph 23 of the Complaint on the ground that this language does not constitute an allegation of fact but constitutes mere musings about things that could have happened:

> Jameson also engaged in similar surveillance and privacy invasions at work, including going through the garbage cans of each Plaintiff nightly, snooping on their email communications and web usage, and directing them to only use the downstairs bathroom (not the one on the floor of their offices).  Plaintiffs reasonably feared that Jameson might have hidden another listening device or camera in the downstairs bathroom, causing them further anxiety, stress and suffering.

(Compl. ¶ 23.)  Defendants also seek to strike paragraph 24, which states that "Plaintiffs were never put on notice or consented to email snooping, garbage can sifting, or any monitoring of their use of the bathroom at Dementia Society."  (Id. ¶ 24.)  Defendants also ask us to strike the portion of paragraph 36 that alleges that Jameson had access to the offices of the Dementia Society after Plaintiffs were told that the offices had been closed and that this access allowed Jameson "time to destroy evidence of his criminal conduct."  (Id. ¶ 36.)  In addition, Defendants ask us to strike that portion of paragraph 80 that states that, in response to Plaintiffs' complaint to the police, "Defendants allowed Jameson to cover up and destroy evidence of his wrongdoing." (Id. ¶ 80.)

We agree that the last sentence in paragraph 23 must be stricken because the allegation that Jameson "might have hidden another listening device or camera in the downstairs bathroom" is entirely supposition and is not an allegation of fact.  As such, it is immaterial to the claims alleged in the Complaint.  This supposition is prejudicial and could confuse the issues in this case, which pertain to violations of the Wiretap Acts, intrusion upon seclusion through the

interception of Plaintiffs' communications, and the wrongful discharge of Plaintiffs in retaliation for their reporting Jameson's alleged wiretapping to the police. Accordingly, we grant the Motion to Strike as to this allegation in paragraph 23 of the Complaint and strike the last sentence of paragraph 23. See Angelis, 2024 WL 643142, at *3 (noting that motions to strike "will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case" (quotation omitted)). The remaining allegations that Defendants challenge are all allegations of fact that are at least somewhat related to the claims asserted in the Complaint and, thus, are unlikely to cause confusion of the issues. Accordingly, we deny Defendants' request that we strike the remainder of paragraph 23 and the identified language in paragraphs 24, 36 and 80 of the Complaint.

## IV.    CONCLUSION

For the reasons stated above, we deny Defendants' Motion to the extent that it asks us to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6). We grant the Motion to the extent that it asks us to strike the following language of paragraph 23 of the Complaint pursuant to Rule 12(f): "Plaintiffs reasonably feared that Jameson might have hidden another listening device or camera in the downstairs bathroom, causing them further anxiety, stress and suffering." (Compl. ¶ 23.) We deny the Motion to the extent that it asks us to strike the remainder of paragraph 23 and the identified language in paragraphs 24, 36, and 80 of the Complaint. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.

18